IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| MICHAELA UNDERWOOD, as the | * | |
| Duly appointed Administratrix of the | * | |
| Estate of James Aaron McBrayer, | * | |
| Deceased; | * | |
| SHERRI McBRAYER, Individually | * | |
| And as the surviving spouse of | * | |
| JAMES AARON McBRAYER, | * | |
| Deceased, and; | * | |
| SAMUEL AARON McBRAYER, | * | |
| by and through his Mother and natural | * | |
| Guardian ANGIE McBRAYER, and | * | |
| JORDAN JANIS McBRAYER, | * | |
| the surviving children Of James | * | |
| Aaron McBrayer, Deceased, | * | |
|     Plaintiffs, | * | |
| | * | |
|     v. | * | CIVIL ACTION FILE NO.: |
| | * | 7:21-cv-00040-WLS |
| HON. GENE SCARBROUGH | * | |
| Individually and in His official | * | |
| Capacity as Sheriff of Tift County, | * | |
| Georgia, CLIFF HENDERSON | * | |
| Individually and in his official | * | |
| Capacity as a Lieutenant Deputy | * | |
| Sheriff of Tift County, Georgia | * | |
| ANTHONY RAYMOND TRIPP Jr. | * | |
| Individually and in his official | * | |
| Capacity as Deputy Sheriff of | * | |
| Tift County, Georgia, | * | |
| CONNOR BRENNEN SPURGEON | * | |
| Individually and in his official | * | |
| Capacity as Deputy Sheriff of Tift | * | |
| County, Georgia, and | * | |
| AXON ENTERPRISES, INC. of DE, | * | |
| a Delaware Corporation, | * | |
|     Defendants. | * | |

1

## PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF BRIAN BATTERTON

## GENERAL OBJECTION TO BATTERTON'S TESTIMONY

Officer Batterton's testimony is disclosed solely in his Rule 26 report.  There is no deposition of him in this case.  A review of Officer Batterton's Rule 26 reveals that all of his opinions are either in the form of a legal conclusion on Plaintiffs' claims or are constructed narratives from the evidence of record offered to bolster the credibility of the testimony of the Sheriff's department Defendants.  While Rule 704 of the Federal Rules of Evidence permits experts to testify regarding disputed facts, there are no relevant disputed facts in this case as everything is documented either by the bodycam videos from the Defendants themselves or in records created by the Defendants.  In many instances, Officer Batterton offers opinions about what a "well-trained officer" might conclude in this case regarding articulable, reasonable suspicion (ARS) or probable cause even though Defendant Tripp unquestionably testified that he had neither ARS or probable cause when he first encountered Mr. McBrayer.

Relying on Rules 104, 403 and 702 of the Federal Rules of Evidence, Plaintiffs object to Officer Batterton as an expert witness in this case because he offers no admissible or relevant testimony to assist a jury in this case.  "**Expert**

**testimony on issues of law is inadmissible and experts may not offer ultimate legal conclusions on a plaintiff's claims**." *Newkirk v Enzor*, (U.S.Dist.Ct. of S.C.; civil action file nos. 2:13-1634-RMG and 2:13-1635-RMG, pg. 8)(Exhibit A to this motion) (citing *In re Safety-Kleen Corp. Rollins Shareholders Litig.*, No.: 3:00-1343-17, 2004 WL 5504972 at *1 (D.S.C. Aug. 30, 2004). "**Testimony about intent or motive (**an essential element of the allegation of a crime being committed or an effort to explain the conduct of a law enforcement officer**) lies outside the bounds of expert testimony**." *Newkirk v Enzor*, supra. at page 8 (citing *SMD Software, Inc. v. EMove, Inc.*, 945 F.Supp.2d 628, 643 (E.D.N.C. 2013). "**It is not an expert's role to offer opinions about the credibility of witnesses.**" *Newkirk v Enzor*, supra. at page 8 (citing *United States v Dorsey*, 45 F.2d 809, 815 (4th Cir., 1995). "**Further, 'an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence'.**" *Newkirk v Enzor*, supra. at page 8 (citing *Highland Capital Mgmt., L.P. v Schneider*, 379 F.Supp.2d 461, 469 (S.D.N.Y., 2005).

## <u>NEWKIRK v.ENZOR</u>

Officer Batterton has already been excluded as an expert under Daubert in a case in which his Rule 26 report was substantially similar to what he has produced in this case. The case in which he was excluded was *Newkirk v Enzor*, Civil Action Nos. 2:13-1634-RMG and 2:13-1635-RMG (District Court of South Carolina,

2017)(attached hereto and incorporated herein by reference as Exhibit "A"). A copy of Batterton's Rule 26 report in *Newkirk v Enzor* is attached hereto and incorporated herein by reference as Exhibit "B". This is a summary of Batterton's report in *Newkirk* that was stricken by the Court:

1) Trooper Enzor's stop was "consistent with proper law enforcement practice in that the Trooper had probable cause. . . (Ex. B, para. 22)

2) "another reasonable officer in Trooper Enzor's position could have believed that. . .Mrs. Newkirt was refusing to comply. . ." (Ex. B, para. 24).

3) ". . .the facts were sufficient to cause a reasonable officer in the same situation to believe that probable cause existed to arrest. . ." (Ex. B, para. 25).

4) Force used by Trooper Enzor was "in accordance with generally accepted proper law enforcement procedures during the arrest. . ." (Ex. B, para. 26).

5) Troopers Enzor and Lee ". . .acted in accordance with generally accepted police practice in their handling of Mrs. Newkirk. . ." (Ex. B, para. 27).

6) ". . .that (facts described and video) were sufficient to cause a reasonable officer in the same situation to believe that probable cause existed to arrest Mr. Newkirk (for violation of laws quoted in the report). (Ex. B, para 28).

In *Newkirk v Enzor*, Batterton attempted to testify through his report that the Defendant officer "reasonably could have believed" that the Newkirks had committed several violations of law. As he has done in this case, for each of the alleged violations of law, Batterton quoted law in his report to support his testimony. The trial court in Newkirk found that Batterton's report on this matter violated the rule against experts testifying about the law and excluded the testimony.

Batterton also attempted to testify that, based on his experience and training, it was his opinion that the Defendant officer in fact had probable cause to believe crimes had been committed by the Newkirks. The trial court found that this part of the report violated the rule against expert witnesses attempting to "bolster" the credibility of the Defendant officer as a witness and excluded this part of the report and testimony.

Batterton also attempted to opine that the Defendant officer in *Newkirk v Enzor* reasonably "could have thought probable cause did exist" to justify the actions of the Defendant officer. The Court found that this effort by Batterton was nothing more than a legal argument, not an admissible expert opinion. That part of Batterton's report was also excluded.

Finally, the Court found that, throughout his report, Batterton continually made editorial comments such as "Mrs. Newkirk 'continued to be unruly". The Court ruled that this was nothing more than an effort by Batterton to construct a

factual narrative based upon record evidence—a narrative bolstered by his credentials as a purported expert. The report was also excluded on this basis.

## BATTERTON'S REPORT IN THIS CASE

1) *"It is my opinion that a reasonable and well-trained deputy in Deputy Tripp's position could believe that he was acting in accordance with generally accepted police practice when he entered the property at 381 Hall Road in response to a dispatch for a person yelling for help, when he heard yelling coming from that location. (Para. 18 of the report).*

This opinion has no relevance as Plaintiffs have not alleged in this case that Defendant Tripp's initial entry onto the land where Mr. McBrayer was located violated the Fourth Amendment. It was Defendant Tripp's escalation of the "Tier 1" encounter to a "Tier 2" level and subsequent acts of violence that violated Mr. McBrayer's Fourth Amendment rights.

2) *"It is my opinion that a reasonable and well-trained deputy in Deputy Tripp's position could believe that he was acting in accordance with generally accepted police practice during his initial contact and subsequent detention of McBrayer." (Para. 19 of the report)*

This is clearly an effort to tell the Court and jury what the ultimate conclusion should be in light of the alleged evidence and law. For this opinion Mr. Batterton

states that "a reasonable and well-trained deputy would be acting in accordance with generally accepted police practice in believing that criminal activity may have been afoot in this incident, based on the following:"

Batterton goes on to cite Georgia law on the crimes of Loitering or Prowling (O.C.G.A. Section 16-11-36), Simple Assault (O.C.G.A. Section 16-5-20), Obstruction Misdemeanor (O.C.G.A. Section 16-10-24(a) and Obstruction Felony (O.C.G.A. Section 16-10-24(b). Batterton then goes on to opine that a reasonable well-trained deputy may believe that the above crimes were being committed.

This opinion by Batterton is the same that he tried to render in paragraphs twenty-five (25) and twenty-eight (28) of his report in *Newkirk v Enzor* (U.S.Dist.Ct. of S.C.; civil action file nos. 2:13-1634-RMG and 2:13-1635-RMG)(Exhibits "A" and "B" to this motion); both of which were excluded by the court under *Daubert*.

Batterton first assumes that Defendant Tripp formed some opinion that "criminal activity was afoot". Tripp, however, testified under oath that, when he first approached Mr. McBrayer, Tripp had no articulable, reasonable suspicion that any crime had been or was being committed and admitted that he did not have probable cause to effectuate an arrest. (Dkt. , Ex. A, pg. 248-250; 253-254) In fact, Tripp testified that, when they had Mr. McBrayer handcuffed and his legs

hobble-strapped, Mr. McBrayer, even then, was not under arrest. (Dkt. Ex. A , pg. 277).

Batterton's opinion on this matter is a legal conclusion. He is wanting to testify that Defendant Tripp was legally allowed to escalate the initial encounter with Mr. McBrayer to a "Tier 2" type encounter; a conclusion about the law which is not only wrong but is also within the exclusive authority of the court. Expert witnesses are simply not allowed to tell a jury what the law is. *Haney v Mizell Memorial Hospital*, 744 F.2d 1467, at 1473-1474 (11th Cir., 1986); *Coyote Portable Storage, LLC v PODS Enterprises, Inc*., 85 Fed. R. Evid. 459 (N.D. Ga. 2011). Stated bluntly, Mr. Batterton should not be allowed to testify that Mr. McBrayer committed the crimes he listed in his report or that Defendant Tripp would have been justified in believing Mr. McBrayer committed any crime.

Batterton's opinion that the detention was legal is both legally incorrect and is an impermissible expert opinion. The law is well settled that, in a "Tier 1" encounter, the suspect is allowed to leave the presence of the officer and respond with proportionate force to any effort by the officer to detain him/her. *State v Copeland*, 310 Ga. 345, 850 S.E.2d 736 (2020). Furthermore, even if the "Tier 1" law did not apply, Batterton is offering an opinion about the legality of the detention; a legal conclusion that is not a permissible expert opinion.

3) "*It is my opinion that Deputy Tripp acted consistent with generally accepted police practice in deploying his Taser against McBrayer and in re-energizing the Taser three additional times. (Paragraph 19 of Batterton's report).*

For this opinion, Batterton addresses each of Defendant Tripp's four deployments separately.  Plaintiffs will respond in the same manner.

**Defendant Tripp's First Deployment:**

In this part of his report, Batterton opines that the first deployment of the Taser weapon was justified based on the argument that Defendant Tripp, as a "reasonable well-trained deputy" could have believed that Mr. McBrayer had committed the offense of Loitering and, later, Simple Assault.  This legal conclusion by Batterton is completely contrary to the testimony of Defendant Tripp who admitted he had no suspicion or probable cause of a crime being committed when he first encountered Mr. McBrayer.

Batterton then goes on to attempt to apply the Fourth Amendment standard regarding excessive force and cites the U.S. Supreme Court case of *Graham v Connor*, as supporting his argument that Defendant Tripp's use of the Taser weapon on Mr. McBrayer was reasonable and not excessive.  This is exactly the tactic Batterton attempted to use in paragraph twenty-six (26) of his report in *Newkirk v Enzor*.  As in *Newkirk*, Batterton opines in this paragraph of his report

that Mr. McBrayer was actively resisting arrest. The court in *Newkirk* also excluded this portion of Batterton's report and testimony finding that "what constitutes resistance is a question of law". The court refused to allow Batterton to testify about the law.

Batterton then tries to argue that Defendant Tripp's targeting of Mr. McBrayer's chest area was also legal. In so doing, Batterton again completely misstates the evidence. Batterton argues that Mr. McBrayer's own actions made it "impracticable" for Defendant Tripp to take a slow deliberate aim; making it sound as though the placement of the Taser darts into Mr. McBrayer's chest was some kind of an accident. However, Defendant Tripp testified that he intentionally placed at least one of the Taser darts in Mr. McBrayer's chest and acknowledged that the darts were actually placed just above Mr. McBrayer's heart:

*Q:    Okay. Now I want you to look at page 41 (of a previous deposition of Defendant Tripp) with me. I'm reading about line 12. "QUESTION: Did you intend to hit him in the chest or was that just kind of how it happened? ANSWER: My intention was, yes, for one of the prongs to go toward the chest area." (Dkt 39, pg. 216)*

This opinion by Batterton is the same that he tried to render in paragraphs

twenty-five (25) and twenty-eight (28) of his report in *Newkirk v Enzor* (U.S.Dist.Ct. of S.C.; civil action file nos. 2:13-1634-RMG and 2:13-1635-RMG)(Exhibit A to this motion); both of which were excluded by the court under *Daubert*.

First, Batterton's opinion on this matter has no basis in the facts. Defendant Tripp testified that his placement of at least one of the prongs into Mr. McBrayer's chest was intentional. The placement was not based on an "impracticable" set of circumstances.

Second, Batterton is simply quoting the law and then attempts to apply the law to the facts as he creates them. This is an impermissible expert legal conclusion and should be excluded from testimony.

Third, Batterton's attempted application of *Graham v Connor* is nothing more than a legal argument, not an admissible expert opinion. It is identical to what he attempted to do in paragraph 28 of his report in *Newkirk*. It is an improper legal conclusion drawn by an expert witness and should be excluded from testimony.

## Defendant Tripp's Second Deployment:

This is what Batterton said about Defendant Tripp's second deployment of the Taser weapon:

*(b)(1). Additionally, a reasonable and well-trained officer, consistent with training and generally accepted police practice, could believe that McBrayer was committing violations of the state misdemeanor obstruction statute' and felony obstruction,'" as discussed in Paragraph 18(b)(2) and (b)(3). Felony obstruction is a serious crime. The second factor is whether McBrayer posed a threat to Deputy Tripp. A reasonable and well-trained deputy could believe that McBrayer posed a threat in that Deputy Tripp was alone with McBrayer, McBrayer had attempted to assault him just seconds earlier and now was turning toward him in what would appear to be another attempt to assault him. As to the third factor, McBrayer was both fleeing and actively resisting arrest when he first ran from Tripp and second, turned in his direction with a bladed both and his right ann pulled back, like someone preparing to strike. Therefore, it is my opinion that Deputy Tripp did not violate generally accepted police practice when he re-energized his Taser for a second, five-second cycle."*

Batterton again begins with the quotation of the law on misdemeanor and felony obstruction and then attempts to apply (incorrectly so) the law to the facts. This is another attempt to testify about the law and is an impermissible expert opinion.

Batterton then says that "a reasonable and well-trained" officer could believe that Mr. McBrayer posed a threat to Defendant Tripp. Defendant Tripp does not

need Batterton's opinion to establish whether or not Defendant Tripp believed Mr. McBrayer posed a threat to him.  Defendant Tripp can testify to that himself.  This is another attempt by Batterton to bolster the credibility of Defendant Tripp's testimony and is an improper expert opinion.  It should be excluded from testimony.

Finally, Batterton then opines that Mr. McBrayer was fleeing and actively resisting arrest which justified the second deployment.   This is yet another narrative by Batterton constructed from his interpretation of what is shown in the bodycam video; identical to his opinion in paragraph 26 of his report in *Newkirk*. It is an impermissible expert opinion and should be excluded from testimony.

**Defendant Tripp's Third Deployment:**

This is what Batterton had to say about Defendant Tripp's third deployment:

*"After Deputy Tripp re-energized the Taser the second time, McBrayer went to his knees but NMI was not achieved. . .Tripp moved in to as if to attempt to gain control of McBrayer, but he rolled onto his back, to hinder Tripp's attempt to gain control. McBrayer is then seen on Tripp's body camera video standing up, grunting loudly, and charging at Deputy Tripp. Six seconds after the second Taser cycle ended, Deputy Tripp re- energized his Taser, for a third, five-second cycle. Regarding the first factor from Graham, the serious of the crimes remains consistent*

*with those discussed in subparagraph (c) above, with felony obstruction being the most serious. Regarding the second factor, a reasonable and well-trained deputy could believe that McBrayer posed an imminent threat to Deputy Tripp. Tripp was still alone. McBrayer attempted to charge at him. Regarding the third factor, McBrayer continued to actively resist as shown by his rolling over to hinder Tripp's attempt to control him, and McBrayer standing up and attempting to charge at Tripp."*

This opinion by Batterton is essentially the same as his opinion on the second deployment of the Taser. Batterton quotes *Graham v Connor* and the statutes on obstruction and then attempts to construct a narrative of the facts to apply to these legal standards. Legal conclusions and constructed narratives about the facts are impermissible expert opinions and they should be excluded from testimony.

**<u>Defendant Tripp's Fourth Deployment of the Taser weapon:</u>**

*The third use of the Taser, like the others, did not achieve NMI. Again, a loud arcing sound was heard, which indicated the probes still did not have an effective connection. McBrayer continued to walk and then run or charge at Deputy Tripp, as Tripp back-peddled to avoid being attacked. On Deputy Tripp's body camera video, it appears that McBrayer hit Tripp and*

knocked him down. Tripp stated that during the incident, at some point, McBrayer hit him in the face and knocked him down. It is at this point, six seconds after the third cycle ended, that Deputy Tripp re-energized the Taser for a fourth, five-second cycle. Again, the loud arcing sound is heard, which indicated the probes still did not have an effective connection. Regarding the first factor from Graham, the seriousness of the crimes, remains the same, with felony obstruction being the most serious. Regarding the second factor, a reasonable and well-trained officer could believe that McBrayer posed an imminent threat to Deputy Tripp. Deputy Tripp was still alone. McBrayer was non-compliant to verbal commands. He charged at Tripp, and appears on the body camera to have made contact with Tripp, and Tripp appears to fall to the ground. Regarding the third factor, McBrayer continued to actively resist Deputy Tripp by charging at him, making contact with him (possibly hitting him in the face), and possibly knocking Tripp to the ground. It should be noted that there is no specific prohibition by Taser, Inc. or generally accepted police practice on exceeding three cycles of the Taser. The warning from Taser refers the fact that most studies regarding conducted energy weapons (CEWs) have not exceeded fifteen seconds of CEW application and no studies have exceeded forty-five seconds. Thus, Taser, Inc. recommends the

*following: "Use the shortest duration of CEW exposure objectively reasonable to accomplish lawful objectives, and reassess the subject's behavior, reaction, and resistance before initiating or continuing the exposure. If a CEW deployment is ineffective in incapacitating a subject or achieving compliance consider alternative control measures in conjunction with or separate from the CEW."" Here, Deputy Tripp had no other less injurious force options available. Using hands to strike or grab McBrayer, while alone, is a risk of injury to both Tripp and McBrayer. It also puts McBrayer within arms reach of Tripp's firearm. Using OC spray poses a significant risk of cross contamination to Deputy Tripp, which is not acceptable when he is alone. Lastly, the other weapon available was Tripp's firearm, which is clearly more injurious than his Taser. I also note that, during the second, third and fourth re-energizing of the Taser, there appeared to be insufficient time to change Taser cartridges to attempt to deploy new probes to attempt a better connection. Additionally, none of the four Taser cycles produced NMI, so McBrayer's body was not subjected to the maximal stress that could be caused by the Taser. As such, it is my opinion that Deputy Tripp acted in consistent with generally accepted police practice when he re-energized his Taser for a fourth, five-second cycle.*

Batterton's opinions on Defendant Tripp's fourth deployment of the Taser weapon culminate all of his opinions regarding the four deployments of the Taser weapon.  He again begins with a constructed narrative of the record evidence to bolster his opinion that the use of the Taser was legal.  He then attempts to bolster the credibility of Defendant Tripp by saying a "reasonable well-trained" deputy could believe that Mr. McBrayer was a threat to him; something only Defendant Tripp should be saying without allowing Batterton to bolster Defendant Tripp's credibility.  Predictably, he then refers again to *Graham v. Connor* to suggest that Mr. McBrayer has committed serious crimes; again, in the face of Defendant Tripp's testimony that he had neither ARS or probable cause to believe that any crime had been or was being committed when he first encountered Mr. McBrayer.  All of these are impermissible expert opinions and should be excluded from testimony.

Batterton then enters into a new realm of opinion when he says that none of the four deployments subjected Mr. McBrayer's body to "maximal stress" that can be caused by a Taser weapon.  The stresses that are put on a human body by a Taser weapon are medical matters than should only be addressed by an expert with appropriate medical training.[1] A review of Officer

---

[1] The GBI medical examiner in this case reported and then testified that Mr. McBrayer's death was due to "Excited delirium in conjunction with physical altercation including Taser use , and cocaine and mitragynine toxicity".

Batterton's credentials in his report does not reflect any medical training that would qualify him to render medical opinions on the physiological stresses a Taser weapon places on the human body. Batterton is not, therefore, qualified to testify to those stresses and this portion of his report should be excluded from testimony.

Plaintiffs do not object to Officer Batterton's testimony regarding the Taser policy on continued deployments after apparent ineffectiveness, the time it takes to change cartridges on a Taser weapon or the availability of alternate control measures.

4) "*It is my opinion that Deputy Spurgeon acted consistent with generally accepted police practice in deploying his Taser two times, in drive-stun mode, against McBrayer*."

The problems with Batterton's opinions on Defendant Spurgeon's deployment of his Taser weapon in drive-stun mode are essentially the same as the problems from Batterton's opinions on Defendant Tripp's four deployments. As such, Plaintiffs' objections to Batterton's opinions on Defendant Spurgeon's use of the Taser weapon are the same as those written above in Batterton's report on Defendant Tripp. These opinions are legal arguments, constructive narratives and should be excluded.

5) "*The response and methods used by Deputy Tripp, Deputy Spurgeon, Deputy Parker, Deputy Calderone, Lieutenant Henderson and Deputy Hancock in attempting to gain and maintain control of McBrayer were not contrary to generally accepted police procedure.*

Batterton begins in paragraphs a. and b. by identifying Mr. McBrayer as a person who is suffering from a mental episode or excited delirium. This represents an interesting change in trial tactics by the Defendants as Defendants Tripp and Spurgeon testified under oath that they did not know what excited delirium is. Moreover, his narrative statement that "the person must be subdued to the point that they can be safely treated" is another constructed narrative designed to bolster the conduct of the Defendant officers. The simple fact is that, after subduing Mr. McBrayer, the Defendants did absolutely nothing to "safely treat" Mr. McBrayer for his excited delirium. They simply picked him up, slid him into the back seat of the patrol car and shut the door. There is absolutely no evidence that the Defendants ever made any attempt to put Mr. McBrayer in a position for "treatment" of his excited delirium.

In paragraph b. of this section of his report, Batterton acknowledges that avoiding a prolonged fight and physical struggle increases a person's chance of surviving an episode of excited delirium. However, he completely fails to connect this statement with the facts of the case. After refusing to allow Mr.

McBrayer to leave the "Tier 1" encounter, Defendant Tripp and then Defendant Spurgeon attempt to Taser Mr. McBrayer six (6) times and then physically struggle with him for over ten (10) minutes on the ground in an effort to subdue him. They then take Mr. McBrayer's hogtied body and slide him into the backseat of the patrol car; leaving him there for over another ten (10) minutes. Batterton's statement on this matter, while very helpful to Plaintiffs' case, is simply not adjusted to the undisputed facts and ends up as nothing more than a constructed narrative designed to bolster the credibility of the testimony of Defendants Tripp and Spurgeon.

In subparagraph c. of this section of his report, Batterton begins to seriously distort the evidence to construct yet another narrative to bolster the credibility of Defendants Tripp and Spurgeon. Batterton begins by stating in deceptive manner that Defendants Tripp and Spurgeon radioed for assistance resulting in several deputies responding to the scene. It is true that Tripp and Spurgeon radioed for assistance, but only after they initiated the Tasing and physical altercation with Mr. McBrayer on their own. They did not radio for assistance prior to engaging in the Tasering and physical altercation with Mr. McBrayer. This is another narrative constructed by Batterton to bolster the credibility of Defendants Tripp and Spurgeon and should be excluded from testimony.

20

Then, Batterton furthers his narrative by suggesting that Defendants Tripp and Spurgeon summoned EMS assistance to help Mr. McBrayer. The EMS report (attached hereto as Exhibit "D") clearly states that, upon arrival, EMS was only notified of the injured Defendant Spurgeon. They were not initially even told that Mr. McBrayer needed any form of medical assistance. Subparagraph c. of Batterton's report is filled with false narratives which are designed to bolster the credibility of Defendants Tripp and Spurgeon and should be excluded from testimony.

Finally, Batterton actually says in subparagraph d. of this section of his report that the Defendant deputies summoned EMS to deal with Mr. McBrayer as "a person experiencing excited delirium" and then actually wrote "While the deputies here were unsure if McBrayer was experiencing excited delirium, they still called EMS to the scene. . .", attempting to imply that excited delirium was even something that they were thinking about. The Defendant deputies never even gave excited delirium a thought and testified under oath that they did not know what excited delirium was:

Batterton's fifth opinion is nothing more than his constructed narrative of the bodycam videos and should be excluded from testimony in this case.

6) "*It is my opinion that the applicable policies of the Tift County Sheriff's Office (TCSO) are in accordance with generally accepted police practice*."

Plaintiffs do not argue that the Tift County Sheriff's Department policies are Improper or insufficient.  Therefore, Batterton's opinion on this matter is irrelevant.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully submit that this motion in limine should be granted.

This 18^(TH) day of August, 2022.

_____
CRAIG ALAN WEBSTER
Attorney for Plaintiffs
Ga. State Bar No.: 744950

111 12^(th) Street East
Tifton, Georgia 31794
(229) 388-0082
(229) 388-0084 (fax)
cwebster@twflaw.com

SPURLIN & SPURLIN

/s/ John C. Spurlin (with permission)

_____
JOHN C. SPURLIN
Attorney for Plaintiffs
Ga. State Bar No.: 673230

1510 Whiddon Mill Road
Post Office Box 7566
Tifton, Georgia 31793
(229) 391-9106
johnspurlin@spurlinlaw.com