IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| MICHAELA UNDERWOOD, as the duly appointed Administratrix of the Estate of James Aaron McBrayer, Deceased, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HON. GENE SCARBROUGH, *et al.*, <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : CASE NO.: 7:21-cv-00040 (WLS) <br> : <br> : <br> : <br> : <br> : |

## ORDER

Presently before the Court is Plaintiff's Motion for Partial Summary Judgment. (Doc. 34-2.) Therein, Plaintiff contends that they're entitled to summary judgment on the following four (4) issues: (1) whether the initial encounter between Defendant Anthony Raymond Tripp, a deputy sheriff of the Tift County Sheriff's office and Mr. McBrayer was a "Tier 1" encounter under Georgia law; (2) whether Plaintiff's attempts to run away from Defendant, Sheriff Deputy Tripp, constituted obstruction of a police officer under Federal and Georgia law; (3) whether Plaintiff punching Defendant Tripp constituted an illegal assault under Federal and Georgia law; and (4) whether Defendant Tripp's escalation of the encounter, to either a "Tier 2" or "Tier 3" with Plaintiff violated Plaintiff's Fourth Amendment rights. For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment (Doc. 34-2) is **DENIED**.

## RELEVANT PROCEDURAL HISTORY

Plaintiff commenced the present action on April 9, 2021, by filing a Complaint alleging three (3) causes of action. (Doc. 1.) Count One alleged Deprivation of Plaintiff's civil rights by Defendants Scarbrough and Henderson pursuant to 42 U.S.C. § 1983. (*Id.*) Count Two alleged Deprivation of Plaintiff's civil rights by Defendants Tripp and Spurgeon pursuant to 42 U.S.C. § 1983. Count Three alleged a Products Liability claim against Defendant Axon. (*Id.*) Plaintiff also sought compensatory and punitive damages. (*Id.*)

Plaintiff subsequently filed the presently pending Motion for Partial Summary Judgment on July 27, 2022. (Doc. 34-2.) Defendants filed a Response in opposition on August 17, 2022. (Doc. 37.) Plaintiff's Reply was filed on August 31, 2022. (Doc. 44.) Accordingly briefing has now concluded and Plaintiff's Motion for Partial Summary Judgment (Doc. 34-2) is ripe for disposition.

## STANDARD OF REVIEW

### I.     Federal Rule of Civil Procedure 56

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, 555 F. App'x 842, 846 (11th Cir. 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). "'A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'" *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citation omitted). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant – in this case Plaintiff – bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet that burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. After the movant has met their burden, the Court must then determine "whether the evidence [submitted by Defendant] presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

2

law." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citation omitted). The nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. While a party can use their affidavit to meet this burden, Fed. R. Civ. P. 56(c)(4), the affidavit must "designate 'specific facts showing that there is a genuine issue for trial,' " and "he may not merely rest on his pleadings." *Graham*, 193 F.3d at, 1282. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Vicks v. Knight*, 380 F. App'x 847, 851 (11th Cir. May 26, 2010) (citation omitted). To avoid summary judgment, the non-movant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form.").

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587-88; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## RELEVANT FACTUAL BACKGROUND

The following facts are derived from the Complaint (Doc. 1); Defendants' Answers to the Complaint (Docs. 10 & 21); and the Parties' Statements of Material Facts. (Docs. 34-1, 37-1 & 37-2.) Where relevant, the factual summary also includes undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Defendant as the nonmoving party. *See* Fed. R. Civ. P. 56. *Matsushita*, 475 U.S. at 587-88.

On April 24, 2019, one Mr. James Aaron McBrayer was involved in a single vehicle accident on Hall Road in Tift County, Georgia. (Doc. 1 ¶ 9.) This accident occurred "in the area of [Mr. McBrayer's] family's property." (*Id.*) As a result of this accident, Mr. McBrayer received a severe head injury. (*Id.*)

After the accident, Mr. McBrayer appears to have exited his vehicle and "went onto his family's property." (Doc. 1. ¶ 10.) Mr. McBrayer subsequently began to yell for help. (*Id.*) Mr. McBrayer's yells for help were heard by neighbors in the vicinity of the accident who placed a call to 911. (*Id.*) Those neighbors "reported that they heard someone crying out for help." (*Id.*) The neighbors did not provide any additional pertinent information when calling 911. (*Id.*) The 911 dispatcher sent Defendant Sheriff Deputy Connor Spurgeon to the scene. (*Id.*)

Upon arriving at the scene Defendant Spurgeon encountered Mr. McBrayer's vehicle – a silver colored truck – in a ditch on the side of the road. (Doc. 1 ¶ 11 & Doc. 40 at 18.) Upon inspection of the vehicle, Defendant Spurgeon noted that the vehicle had been in a wreck – as evidenced by the fact that the airbags had deployed – and that there was nobody near the vehicle. (Doc. 40 at 18.)

Shortly thereafter, Ms. Angie McBrayer arrived at the scene, identified herself as Mr. McBrayer's ex-wife and allegedly stated that Mr. McBrayer needed medical evaluation and treatment. (Docs. 1 ¶ 11 & 40 at 18.) While Ms. McBrayer and Defendant Spurgeon were communicating, Defendant Sheriff Deputy Anthony Tripp, Jr., arrived at the scene. (Docs. 1 ¶ 12, 34-1 at 2 & 37-1 at 1.) It is not clear from the record presently before the Court whether Defendant Tripp stopped to speak with Defendant Spurgeon and Ms. McBrayer. However, what is clear is that Defendant Tripp set off by himself in order to "see if we could determine who was – who was asking for help." (Docs. 1 ¶ 12, 39 at 26 & 40 at 23.)

Defendant Tripp subsequently encountered Mr. McBrayer at 381 Hall Road. (Docs. 34-1 at 2 & 50 at 24.) When Defendant Tripp encountered Mr. McBrayer, Mr. McBrayer was leaning up against a building, in a crouched position with his elbows on his knees. (Docs. 34-1 at 2 & 37-1 at 1.) While Defendant Tripp did not identify himself as a police officer or utilize his vehicles emergency lights or sirens, at the time that he encountered Mr. McBrayer, Defendant Tripp was in uniform and driving a marked police vehicle. (Docs. 34-1, 37-1 & 44.)

Defendant Tripp approached Mr. McBrayer by driving his vehicle closer. As Defendant Tripp drove his vehicle closer to Mr. McBrayer, but before they could communicate, Mr.

4

McBrayer got up and ran away from Defendant Tripp, around the building.[1] (Doc. 34-1 & 37-1.) Mr. McBrayer subsequently circled back to the front of the building, crouching behind a backhoe bucket under a lean-to approximately thirty-five (35) feet from Defendant Tripp. (Doc. 37-1 & 44.) At this point, Defendant Tripp pulled out his taser because Mr. McBrayer was yelling things like "God hates you." (Doc. 37-1 & 44.)

At the time that Defendant Tripp pulled out his taser, Defendant Tripp had no knowledge of the following: (1) whether Mr. McBrayer was on drugs, (2) Mr. McBrayer's criminal history, (3) Mr. McBrayer's mental health history, (4) whether Mr. McBrayer was in possession of a firearm, (5) whether anyone else was with Mr. McBrayer and (6) whether Mr. McBrayer was the individual who had been in need of help. (*Id.*) There are facts and circumstances in the record, such as Mr. McBrayer flailing his arms around while yelling things like "God hates you," (Doc. 39 at 36) that Defendant Tripp did have a reasonable suspicion based on his experience and training as a law enforcement officer that Mr. McBrayer was on drugs if believed by the fact finder as well as whether Mr. McBrayer was somehow connected to the matters Defendant Tripp was inquiring about. (Doc. 39 at 39.) Defendant Tripp also testified that he did not know at this time whether Mr. McBrayer "was the reason that somebody [else] was yelling for help." (Doc. 39 at 39.)

Unfortunately, the encounter escalated after Defendant Tripp ordered Mr. McBrayer to show him his hands and Mr. McBrayer ran – or charged – at Defendant Tripp.[2] (Docs. 34-2 at 4 & 37 at 2.) Perceiving Mr. McBrayer to be hostile, Defendant Tripp discharged his taser into Mr. McBrayer's chest. (Docs. 34-2 at 4 & 37 at 3.) According to Defendant Tripp, Mr. McBrayer seemed to be unaffected, in that neuromuscular incapacitation was not achieved, as evidenced by the fact that Mr. McBrayer was still running towards Defendant Tripp. (Doc. 39 at 55.) When Mr. McBrayer was originally tased he was approximately ten (10) feet from Defendant Tripp. (Doc. 39 at 52.)

---

[1] The Court notes for the purposes of the record that the Parties dispute whether this constitutes Mr. McBrayer running away from Defendant Tripp. A factual inference is drawn in Defendants' favor at this time as the nonmoving party.

[2] The Court notes for the purposes of the record that it would appear that Defendant Tripp ordered Mr. McBrayer to show him his hands on several occasions, and that Mr. McBrayer refused to comply with any of the instructions issued. (Doc. 39 at 37.)

Given that Mr. McBrayer was still running towards Defendant Tripp, Defendant Tripp backpedaled establishing a distance of approximately twenty (20) feet. (Doc. 39 at 57.) At this point, Mr. McBrayer fell to his hands and knees. (Doc. 39 at 57.) Believing that Mr. McBrayer was surrendering, Defendant Tripp approached. (Doc. 39 at 58.) As Defendant Tripp approached, Mr. McBrayer got back up and ran – or charged – at Defendant Tripp again. (*Id.*) While the exact sequence of events is unclear, what is clear is that Mr. McBrayer struck Defendant Tripp in the face and Defendant Tripp redeployed his taser. (Doc. 39 at 62.) During this encounter Defendant Tripp activated his taser on four (4) separate occasions.

At this point Defendant Spurgeon arrived on the scene. (Doc. 39 at 69.) When Defendant Spurgeon attempted to take Mr. McBrayer into custody, Mr. McBrayer kicked him in the knee, dislocating Defendant Spurgeon's knee cap. (Doc. 40 at 32.) Defendant Spurgeon fell onto Mr. McBrayer and proceeded to wrestle with him on the ground. Defendant Spurgeon then drew his taser, removed the cartridge and "dry-stunned" Mr. McBrayer twice.[3] (Doc. 40 at 35-39.) According to Defendant Spurgeon there was no opportunity to find out more about what was going on with Mr. McBrayer, or to deescalate the situation, prior to this sequence of events. (Doc. 40 at 41.)

Mr. McBrayer was then handcuffed and placed in a hobble strap. (Doc. 40 at 46.) In order to maintain control pressure was also applied to Mr. McBrayer's torso. (*Id.*) Mr. McBrayer continued to talk and move while pressure was applied to his torso and according to Defendant Spurgeon was continuing to actively resist detention. (*Id.*) Mr. McBrayer was then lifted into a patrol car with the assistance of other officers. (Doc. 40 at 47.)

At some point after Mr. McBrayer was placed in the patrol car, he stopped breathing. (Doc. 40 at 173.) Mr. McBrayer was not given a medical assessment prior to the determination that he had stopped breathing. (*Id.*) Mr. McBrayer was pronounced dead at the scene.

## DISCUSSION

As stated *supra*, Plaintiff contends that they're entitled to partial summary judgment on the following four issues: (1) whether the initial encounter between Defendant Anthony Raymond Tripp and Mr. McBrayer was a "Tier 1" encounter under Georgia law; (2) whether

---

[3] The Court notes for the purposes of the record that a dry stun is when the taser is applied with direct pressure to the target.

6

Plaintiff's attempts to run away from Defendant, Sheriff Deputy Tripp, constituted obstruction of a police officer under Federal and Georgia law; (3) whether Plaintiff punching Defendant Tripp constituted an illegal assault under Federal and Georgia law; and (4) whether Defendant Tripp's escalation of the encounter, to either a "Tier 2" or "Tier 3" with Plaintiff violated Plaintiff's Fourth Amendment rights.

As an initial matter, the Court notes that the issues Plaintiffs contend that they are entitled to summary judgment on involve either outright legal conclusions or legal conclusions mixed with facts. (*See* Doc. 34-2.) In addition, Plaintiff's briefing and arguments about "Tiers" of encounters between civilians and police pertain to a Georgia state criminal law issue.[4] (*Id.*) As Defendants correctly noted in their Response brief, however, Plaintiff is moving for summary judgment on a Fourth Amendment legal issue. (*See* Doc. 37.)  Given that this is a Federal civil proceeding, the Court declines to consider Plaintiff's state criminal law arguments solely about tiers of encounters between civilians and police officers as presented. Accordingly, the Court has appropriately recharacterized Plaintiff's four issues as the following: whether there was a stop, detention and/or seizure of Mr. McBrayer that was in violation of the Fourth Amendment? The Court recharacterized the issue as such considering that Plaintiff's state criminal law arguments dealt with reasonable suspicion and probable cause, and Plaintiff's arguments about obstruction and assault necessarily fall within a Fourth Amendment analysis framework. (*See* Doc. 34-2.) The Court notes that Defendants also responded in that vein.[5]

---

[4] According to the Supreme Court of Georgia, there "are at least three types of police-citizen encounters: verbal communications that involve no coercion or detention; brief stops or seizures that must be accompanied by a reasonable suspicion; and arrests, which can be supported only by probable cause." *Jones v. State*, 727 S.E.2d 456 (2012.) A Tier 1 encounter is one that involves no coercion or detention and in which officers must rely upon verbal communications. *State v. Copeland*, 850 S.E.2d 736, 743 (2020). In comparison a Tier 2 encounter is one where an officer "develops a reasonable, articulable suspicion that the citizen is committing or has committed a crime." *Id.* (quoting *State v. Walker*, 764 S.E.2d 804 (2014.) The final tier of encounter, a Tier 3 encounter is one where an officer has probable cause to believe that an individual is committing or has committed a crime. *Id.*

[5] The Court notes for the purposes of the record that the Defendants Tripp, Spurgeon, Henderson and Scarbrough all raise the defense of qualified immunity in their Motions for Summary Judgment. (Docs. 45-4 & 45-5.) However, Defendant Tripp and Defendant Spurgeon only alluded to the defense of qualified immunity in their Response Brief to Plaintiff's Motion. (Doc. 37.) As such, qualified immunity has not been squarely raised by the Parties in the present Motion. Therefore, the Court declines to resolve the issue of whether Defendant Tripp and Defendant Spurgeon are entitled to qualified immunity herein.

Thus, the question for summary judgment purposes is whether there are genuine material questions of fact relative thereto in dispute.

According to the Supreme Court of the United States, the Fourth Amendment prohibits "unreasonable searches and seizures" by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Terry v. Ohio*, 392 U.S. 1, 9, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981). Because the "balance between the public interest and the individual's right to personal security," *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975), tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "'may be afoot,'" *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989) (quoting *Terry*, *supra*, at 30). See also *Cortez*, 449 U.S. at 417 ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity"). Whether an officer had a reasonable suspicion is determined under the totality of the circumstances of each case. *Id*. Typically, the detaining officer must have a "particularized and objective basis" for suspecting legal wrongdoing. *Id.*, at 417.

In the present case, the Court has extrapolated that it is Plaintiff's position that the initial stop, detention and/or seizure of Mr. McBrayer was in violation of the Fourth Amendment, because Defendant Tripp allegedly admitted in his deposition that he lacked reasonable, articulable suspicion or outright probable cause to suspect that a crime had been or was being committed when he first encountered Mr. McBrayer. (Docs. 34-2 at 7 & 43 at 2.)[6] In support of this contention, Plaintiff highlights Defendant Tripp's deposition testimony

---

[6] The Court notes for the purposes of the record that the testimony that Plaintiff cites as an unequivocal admission that Defendant Tripp did not have an articulable reasonable suspicion or probable cause is not the smoking gun Plaintiff wishes it to be. (Docs. 43 at 2 & 39 at 253.) While Plaintiff represents the testimony as an unequivocal admission that Defendant Tripp did not have reasonable suspicion or probable cause that a crime had been committed when he first encountered Mr. McBrayer, upon review of the transcript testimony in full it becomes clear that Defendant Tripp was simply denying Plaintiff's Counsel's assertions that Defendant Tripp had made certain statements regarding probable cause and reasonable suspicion at an earlier point in the deposition. (Doc. 39 at 248-255.) Defendant Tripp in fact claimed within two pages of the testimony Plaintiff cites as an unequivocal admission that he had a reasonable articulable suspicion that a crime had been or was being committed based on the placement of a 911 call and information that someone had been yelling for help. (Doc. 39 at 251.) The Court further notes for clarity that questions of existence of articulable suspicion,

8

on cross examination during which Defendant Tripp allegedly admitted that he had no suspicion at the time of his initial encounter with Mr. McBrayer that Mr. McBrayer had committed a crime. (Docs. 34-2 at 7 & 39 at 248.)

In the present case summary judgment in Plaintiff's favor as to this issue is inappropriate as under the totality of the circumstances Mr. McBrayer's stop, detention and/or seizure, if so found and believed by the fact finder, was not in violation of the Fourth Amendment, because an objectively reasonable officer would have developed a reasonable suspicion that criminal activity was afoot or at a minimum he was presented with facts and circumstances that justified further inquiry. During that process other acts occurred that touch on the ultimate question as to Plaintiff's claims and Defendants' defenses. In the present case, an objectively reasonable officer could have developed reasonable suspicion that criminal activity was afoot prior to Mr. McBrayer's initial detention because at the beginning of their encounter, it appeared to Defendant Tripp that Mr. McBrayer was on drugs, based on Mr. McBrayer's agitated and erratic behavior. (Doc. 39 at 39.) In addition, Defendant Tripp did not know whether Mr. McBrayer "was the reason that somebody [else] was yelling for help." (Doc. 39 at 39.) Defendant Tripp also did not know whether Mr. McBrayer had been involved in the vehicular accident, whether Mr. McBrayer was in possession of a firearm and finally whether Mr. McBrayer was the individual who had needed help or was the reason that an unknown person had been calling for help. In addition, the subsequent seizure of Mr. McBrayer upon the totality of the circumstances could support a finding that the Defendant's actions were reasonable in light of the fact that Mr. McBrayer ran or charged at Defendant Tripp (Docs. 34-2 at 4 & 37 at 2), struck Defendant Tripp in the face (Doc. 39 at 62), and then dislocated Defendant Spurgeon's knee cap. (Doc. 40 at 32.)

Review is upon the totality of the circumstances in this encounter, not the dissimilated approach taken by Plaintiff in their argument. The Tiers of encounters as defined by the Georgia Supreme Court are not always fixed, singular or linear. They may overlap or transition in the relevant circumstances. Since there are genuine disputes of material facts as to what

---

probable cause, etc. are determined upon the facts and circumstances shown by the evidence, not a party's conclusions or opinions. The incident is not limited to strict tier by tier review and determination in succession as argued by Plaintiff.

happened in the entirety of the circumstances and facts exist that if believed by the fact finder would support a finding of reasonable suspicion or probable cause at some point before the Defendant discharged his taser, summary judgment in not appropriate. In other words, the facts and circumstances do not require judgment in Plaintiff's favor and against Defendants. That is properly left to the finder of fact. Accordingly, because an objectively reasonable officer could have determined that criminal activity was afoot or that further inquiry was necessary under the totality of the circumstances, Mr. McBrayer's detention and seizure on this record was not in violation of the Fourth Amendment as a matter of law. Depending on the findings of fact by the fact finder and whose testimony they credit, a verdict could be returned in favor of either party. [7] Therefore, Plaintiff's Motion for Partial Summary Judgment (Doc. 34-2) is **DENIED**.

## CONCLUSION

In summation, Plaintiff's Motion for Partial Summary Judgment (Doc. 34-2) on whether the initial stop, detention and/or subsequent seizure of Mr. McBrayer violated the Fourth Amendment of the United States Constitution is **DENIED**. Plaintiff's Motion for Partial Summary Judgment (Doc. 34-2) is denied because under the totality of the circumstances an objectively reasonable officer could have believed that criminal activity was afoot, or that further inquiry was necessary or justified. In addition, the totality of the circumstances do not support a finding that Defendant Tripp's actions to detain Plaintiff was necessarily a Fourth Amendment violation as a matter of law.

**SO ORDERED**, this 28th day of March 2023.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

---

[7] The Court notes that in cases such as this, where the parties agree on the basic facts but disagree about the factual inferences that should be drawn from them, summary judgment is inappropriate. *See Clemons v. Dougherty Cnty, Ga.*, 684 F.2d 1365, 1368 (11th Cir. 1982.) Stated otherwise, if reasonable minds might differ on the inferences arising from undisputed facts, the court should deny summary judgment. *Id.*, at 1369.